702 So.2d 337 (1997)
Jeffrey G. KOEPPEN a/k/a Jeffery G. Koeppen and Tri-State Bank & Trust, Plaintiffs-Appellants,
v.
Yoram RAZ, Defendant-Appellee.
No. 29880-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1997.
Rehearing Denied December 4, 1997.
*338 Pringle & Herzog by Perry Pringle, for Plaintiffs-Appellants.
Yoram Raz, in proper person.
Before MARVIN, C.J., and HIGHTOWER and CARAWAY, JJ.
HIGHTOWER, Judge.
In this action to nullify a tax sale due to lack of notice, the former property owner and a mortgagee jointly appeal an adverse summary judgment. We affirm.

FACTS AND PROCEDURAL HISTORY
Jeffrey Koeppen, owner of a certain tract of land as well as a mobile home situated thereon, failed to pay his property taxes as assessed by the Bossier Parish Tax Assessor for the year 1990. Accordingly, in early 1991, the tax collector's office sent notice by certified mail to Koeppen that, if his delinquency continued, the involved real estate and improvements would be offered at a sheriff's sale. The post office returned the envelope and its contents, marked as undeliverable, with the notation "No Mail Receptacle." Further notice of the impending sale twice appeared in the local newspaper, The Bossier Banner Progress. Then, on May 16, 1991, Yoram Raz purchased the land and mobile home via a tax collector's deed.
Four years later,[1] Koeppen and Tri-State Bank & Trust, chattel mortgage holder on the mobile home, filed a petition to annul the previous tax sale on grounds that they had received notice of neither the tax delinquency nor the pending sale. Additionally, plaintiffs sought damages related to the possession of the property by defendant, Raz. After protracted pre-trial motions, the tax sale purchaser succeeded in having the nullity suit dismissed by summary judgment. Plaintiffs' appeal ensued.

*339 DISCUSSION

Summary Judgment
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Regarding the burden of proof anent a summary judgment motion, the legislature has recently amended La. C.C.P. art. 966 for the purpose of clarifying Acts 1996, 1st Ex.Sess., No. 9, and legislatively overruling all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3d Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.03/14/97), 690 So.2d 41. See Acts 1997, No. 483.[2]
As indicated by the Hayes decision (as well as the denoted recent amendments), the jurisprudential presumption against granting summary judgment has been eliminated. In effect, the enacted changes have "leveled the playing field" for the litigants, Hayes, supra, so that documentation submitted by the two parties will now be scrutinized equally and the earlier overriding presumption in favor of trial on the merits has been removed. These procedural amendments serve to bring the Louisiana standard for summary judgment closely in alinement with Federal Rule of Civil Procedure 56. Id. Indeed, summary judgment is today favored to secure the just, speedy, and inexpensive determinations of all except certain disallowed actions. La. C.C.P. art. 966A(2).
Incorporating the federal approach to summary judgments, La. C.C.P. art. 966 now states that if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. And, as consistently noted in La. C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue. Bockman v. Caraway, 29,436 (La.App.2d Cir. 04/02/97), 691 So.2d 815.
As an appellate court, we review summary judgment de novo under the same criteria that govern the district court's considerations regarding the appropriateness of summary judgment. Bockman, supra; Gleason v. State Farm, 27,297 (La.App.2d Cir. 08/23/95), 660 So.2d 137, writ denied, 95-2358 (La.12/15/95), 664 So.2d 454.

Notice to Koeppen
Appellants first contend that, once the post office returned as undeliverable the certified letter addressed to the property owner, it became incumbent upon the tax collector/sheriff to make another attempt to provide Koeppen with notice. A failure in this regard, appellants argue, constitutes a deprivation of due process rights and renders the resultant tax sale null and void.
Tax sales are presumed valid, however, and a tax deed shall be prima facie evidence of validity of the tax sale. La. Const. Art. 7, § 25(A); Constance v. Sudwischer, 502 So.2d 609 (La.App. 3d Cir.1987), writ denied, 503 So.2d 1019 (La.1987). The statutory procedure to be followed by the tax collector for providing notice of delinquent taxes due by property owners is set forth in La. R.S. 47:2180. This provision requires notice of a tax sale to be sent to the property owner by certified mail, return receipt requested.[3] Where the tax debtor's correct address is known and used, certified mail is a reasonable method of notifying the debtor, and it is unnecessary that notice actually be received in order to satisfy due process requirements. Dennis v. Vanderwater, 498 *340 So.2d 1097 (La.App. 3d Cir.1986), writ denied, 501 So.2d 211 (La.1987). Compliance with formal statutory requirements will be adequate if designed to effect notice reasonably expected to be received by the taxpayer and afford him an opportunity to obviate the sale by paying his taxes. U.S. v. Blair, 331 F.Supp. 1277 (E.D.La.1971).
In the instant matter, there is no dispute that the tax collector sent properly addressed notice, by certified mail, to Koeppen and that the post office returned the missive to the sender as undeliverable. Nor does Raz contend that the debtor actually received notification. In this regard, as noted by appellants, where the mailing of a tax notice is required, and a mailed notice is returned to the tax collector as undelivered or unclaimed, the jurisprudence directs that the tax collector take additional reasonable steps to notify the tax debtor of a delinquency. Estate of Willis v. Cairns, 630 So.2d 805 (La.App. 3d Cir.1993).[4]
Even so, since 1985, La. R.S. 47:2180(B) has expressly provided those additional steps to be taken by the tax collector: "In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor's property in the advertising required for unknown owners in Subsection C of this Section." As evidenced by the tax sale deed appearing in the present record and confirmed by the testimony of the tax department supervisor, after the initial mailing had been returned, further notice of the impending sale twice appeared in the local newspaper in compliance with the indicated Subsection.
Thus, in the case sub judice, the sheriff had taken steps reasonably calculated to apprise Koeppen of both his tax delinquency and the impending tax sale. Cf. Hebert v. Wise, 92-2287 (La.App. 1st Cir. 12/15/95), 666 So.2d 409. Consequently, in this respect, summary judgment in favor of Raz properly issued.

Notice to Tri-State Bank
Appellants additionally argue that the lack of notice to the mortgage holder, Tri-State Bank, constitutes a violation of that institution's due process rights and renders the tax sale null and void. The mortgagee maintains that its identity easily could have been ascertained through an inspection of the title records at the Department of Motor Vehicles. Yet neither the record before us nor the posture of the case successfully refute the applicability of La. R.S. 47:2180.1. That statute requires that a mortgagee specifically apprise the tax collector of its mortgage in order to be sent notice of the tax delinquency. Koeppen and Tri-State do not dispute the fact that they did not comply with this provision, and, thus, they cannot sustain the burden of proving the invalidity of the tax sale for lack of statutory notice.
Instead, in their appellate brief, the former property owner and the mortgagee complain that this statutory scheme does not sufficiently embody the constitutional notice requirements of Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). It is well settled, however, that an attack on the constitutionality of a statute must first be raised in the trial court. Williams v. State, DHH, 95-0713 (La.01/26/96), 671 So.2d 899; Ayers v. Brazzell, 26,068 (La.App.2d Cir. 09/21/94), 648 So.2d 406; Hodges Ward v. Lee, 601 So.2d 358 (La.App. 5th Cir.1992). The claim of unconstitutionality must be specially pled in, e.g., a petition, exception, written motion, or answer; it cannot be raised solely in a memorandum, opposition, or brief. Williams, supra. *341 Further, the grounds for the challenge must be particularized, Id., and the state attorney general must be served and given an opportunity to participate in the case in a representative capacity, Ayers, supra; Hodges Ward, supra.
Appellants failed to plead the issue of unconstitutionality in such a pleading before the trial court, did not particularize the grounds of their claim, and neglected to serve the attorney general. Under these circumstances, the issue is not properly before this court for review.[5]

Deposition of Eden Barefoot
Finally, appellants contend that the deposition of the mail carrier, Eden Barefoot, should have been excluded from the evidence supporting the motion for summary judgment in that, they argue, defendant denied his opponents the opportunity to cross-examine this witness fully. But, having resolved the issues of the case without reliance on that deposition, we pretermit discussion of the exclusion matter.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment below is AFFIRMED at appellants' costs.
CARAWAY, J., dissents with written reasons.
CARAWAY, Judge, dissenting.
I respectfully dissent from the majority's affirmation of the summary judgment.
The plaintiffs assert in this case Jeffrey Koeppen's ownership of a mobile home and Tri-State Bank & Trust's security interest in the form of a 1986 chattel mortgage on the mobile home. The Louisiana motor vehicle title to the mobile home which indicates the bank's security interest has been filed by plaintiffs in opposition to defendant's motion for summary judgment. In the absence of proof of certain facts which the law requires for immobilization, a mobile home is considered a movable and would not be subject to the disputed tax sale in this case. Since the defendant's motion for summary judgment contains no proof of immobilization, I would reverse the grant of summary judgment at this time.
The plaintiffs' undisputed assertions of ownership interests in the mobile home must be understood in light of the following provisions in the law:
La. C.C. art. 463. Component parts of tracts of land
Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruits of trees, are components parts of a tract of land when they belong to the owner of the ground.
La. C.C. art. 475. Things not immovable
All things, corporeal or incorporeal, that the law does not consider as immovables, are movables.
La. R.S. 9:1149.3. Classification
Except as otherwise provided in R.S. 9:1149.4, when any manufactured home shall be moved to and located in or upon any immovable property, or installed therein or thereon in a manner which, under any law, might make the manufactured home an immovable or component part thereof, the manufactured home shall be and will remain a movable subject to the provisions of Chapter 4 of Title 32 of the Louisiana Revised Statutes of 1950 governing its mortgage or sale and subject to the provisions of Chapter 9 of title 10 of the Louisiana Revised Statutes and Chapter 10 of Title 6 of the Louisiana Revised Statutes of 1950 and Code Book III, Code Title XII, Chapter 2 of Title 9 of the Louisiana Revised Statutes of 1950 governing its financing. Title to the vehicle shall not pass by the sale of the immovable property to which it has been actually or fictitiously attached, whether such sale be conventional or judicial. No sale or mortgage of or lien upon the immovable property shall in any manner affect or impair the rank or privilege of a chattel mortgage or security interest under Chapter 9 of the Louisiana Commercial Laws on such manufactured home, or the remedies of the holder thereof for its enforcement.

*342 La. R.S. 9:1149.4.A. Immobilization
A. A manufactured home placed upon a lot or tract of land shall be an immovable when there is recorded in the appropriate conveyance or mortgage records of the parish where the said lot or tract of land is situated an authentic act or a validly executed and acknowledged sale or mortgage or sale with mortgage which contains a description of the manufactured home as described in the certificate of title or manufacturer's certificate of origin and a description of the lot or tract of land upon which the manufactured home is placed, and contains a declaration by the owner of the manufactured home and, when applicable, the holder of a mortgage or security interest under Chapter 9 of the Louisiana Commercial Laws on the manufactured home, that it shall remain permanently attached to the lot or tract of land described in the instrument.
From these provisions, a mobile home may be considered as a component part of the tract of land upon which it is located only after compliance with the recordation requirement for immobilization under La. R.S. 9:1149.4. Cf., Revision comment to La. C.C. art. 475 and Hunt v. McNamara, 494 So.2d 1279 (La.App. 2d Cir.1986). Although the tax assessment in this case included the land and the mobile home as though the home were a component part and improvement of the land, such assessment does not cause immobilization. Without proof of immobilization of the mobile home by compliance with the recordation requirement of La. R.S. 9:1149.4, this ad valorem tax sale proceeding could convey title only to the land itself. A material fact issue therefore exists regarding the status of this mobile home which defeats defendant's motion for summary judgment.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and NORRIS, HIGHTOWER, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] Koeppen failed to redeem the property within the three-year time limit set forth in La. Const. Art. 7, § 25.
[2] The 1997 amendments to La. C.C.P. art. 966, being procedural in nature, are subject to retroactive application. See NAB Natural Resources v. Willamette Industries, 28,555 (La.App.2d Cir. 08/21/96), 679 So.2d 477.
[3] Where the city has a population of over 50,000 people, the tax collector has the option of making personal or domiciliary service on the tax debtor.
[4] In Estate of Willis, finding that the plaintiff could not preponderately prove the measures taken by the tax collector after the original notice had been returned by the post office, the appellate court deemed the tax sale null and void. The third circuit decision, however, is distinguishable from the instant matter in that (1) the tax collector in Estate of Willis had received information regarding the tax debtor's new address, and seemingly failed to act on that knowledge upon return of the original notice; (2) the tax purchaser (Willis), having placed himself in the position of plaintiff in a suit to partition the property, squarely faced the burden of proving the validity of the tax sale; and (3) the sale in Estate of Willis occurred in 1984 and, unlike the present matter, turned upon pre-1985 law.
[5] To the extent that appellants' assignment of error regarding the lack of notice to Koeppen attacks the constitutionality of La. R.S. 47:2180, these same precepts control.